IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | |
|---|---|
| MANFRED KEAIS, *as Administrator of the Estate of Eric Christopher Keais*, Deceased, <br><br> Plaintiff, <br><br> v. <br><br> RALPH WILLIAM DOVER, III; OTHEL D. KELLEY, III, JAMES C. NEWSOME, JR., and CITY OF CEDARTOWN, <br><br> Defendants. | CIVIL ACTION FILE <br> 4:21-CV-00175-MHC |

## MEMORANDUM IN SUPPORT OF MOTION TO FILE SECOND AMENDED COMPLAINT

Plaintiff Manfred Keais requests that this Court, pursuant to Federal Rule of Civil Procedure 15(a)(2), permit him to file the attached [Proposed] Second Amended Complaint in this action, and states as follows:

### INTRODUCTION

Federal Rule of Civil Procedure instructs courts to "freely give leave when justice so requires" for a Plaintiff to file an amended complaint. Fed. R. Civ. P. 15(a)(2). Generally, "where a more carefully drafted complaint might state a claim, a plaintiff **must** be given at least one chance to amend the complaint before the

district court dismisses the action with prejudice." *Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir. 1991) (emphasis added) (overruled in part on unrelated grounds). "There must be a substantial reason to deny a motion to amend." *Laurie v. Ala. Ct. of Crim. App.*, 256 F.3d 1266, 1274 (11th Cir. 2001) (emphasis added).

Here, there is no serious question that at least some portion of this action will be entitled to proceed. As an initial matter, Manfred Keais ("Keais") is certainly entitled to bring a wrongful death action against Defendant Dover for negligently striking Eric Keais ("Eric") with his vehicle and then fleeing the scene. Likewise, Defendant Kelley so clearly engaged in criminal and tortious conduct that he has been criminally indicted for his role in the underlying incident. And Defendant Newsome's conduct in delaying the provision of medical services has been frankly criticized by the Polk County Coroner as wholly inappropriate and directly contributing to Eric's death. While Keais is not discounting his obligation to plead his claims correctly, there is little doubt that actionable conduct has occurred here, and a more carefully drafted complaint can state a claim.

Keais has already filed an Amended Complaint in this action, but did so pursuant to his automatic right to amend without leave of court pursuant to Rule 15(a)(1). The Eleventh Circuit's decision in *Banks* contemplates that where a district court determines that a motion to dismiss is due to be granted, it is at that point that

plaintiff must be given at least one chance to amend. 928 F.2d at 1112. Accordingly, Keais believes that Eleventh Circuit case law effectively establishes his right to a minimum of two amendments: First, his amendment without leave of court under Rule 15(a)(1). Second, an amendment pursuant to court order under Rule 15(a)(2). This interpretation also comports with the spirit of amendments in Georgia, which allow nearly limitless amendments to complaints before the entry of the pretrial order. *See* O.C.G.A. § 9-11-15(a).

Although Keais therefore believes that this motion is due to be granted as a matter of course, Keais candidly acknowledges that he has now filed two amended complaints in short succession, both times mooting several pending motions to dismiss. This Court may be reasonably skeptical of this series of events, viewing it as potentially intended to delay this litigation or create duplicative work for the Defendants. Accordingly, Keais below presents in some detail why justice requires the filing of a Second Amended Complaint, and how specifically the proposed Second Amended Complaint addresses the arguments raised in Defendants' motions to dismiss.

## ARGUMENT

There are at least three reasons why justice requires the filing of a Second Amended Complaint.

First, Keais is recently in possession of new information that substantially changes the factual allegations in this case. Specifically, since the time that Defendant Dover fatally struck Eric, Defendant Kelley had taken the public position that he was not in the vehicle at that time, and instead went to Dover's location after Dover called him at his home. Indeed, Kelley's motion to dismiss as recently as this month asserted he "was not in the vehicle." #29-1, at 1. Although Keais has always been skeptical of the notion that Kelley came to the scene from his home, he has not had a good faith basis for alleging to the contrary.

However, after Kelley repeated that position in briefing to this Court, Auto-Owners Insurance Company, which issues a policy to Kelley's employer, filed a declaratory judgment action in this Court on November 16, 2021, alleging that "[a]t the time of the Incident, Kelley was riding in the passenger seat of Dover's Hyundai Santa Fe SUV." *Auto-Owners Insurance Co. v. Keais, Et. Al*, 4:21-cv-00216-MHC (N.D.Ga.), Docket Entry #1, at ¶ 15. Keais now has a good faith basis for alleging upon information and belief that Kelley was in the vehicle and at the scene of the incident, and needs to amend his complaint to include allegations related to that possibility.

Second, after careful review of Defendants' various motions to dismiss, Keais' counsel has concluded that Defendants are correct that Defendant Kelley was

not performing his official job duties for the City of Cedartown when he used his authority to intervene into the investigation of the collision, but that he was acting under color of state law, using his positions with the City of Cedartown and the State of Georgia to obtain special favor for himself and Dover. This conclusion has several significant legal implications. First is that Keais does not currently have a good faith basis for alleging a claim against Kelley in his official capacity, and the proposed Second Amended Complaint removes that claim. Second is that because Kelley was acting under color of state law, he is subject to a civil rights claim in his individual capacity, which is now included in the proposed Second Amended Complaint. Finally, because Kelley was not effectuating his official duties as a Cedartown Official, he may not avail himself of the defense of official immunity. These changes in Keais' understanding of the facts require an additional amendment to the complaint.

Third, Keais' attorneys carefully reviewed Defendants' several motions to dismiss and have made numerous revisions to the proposed Second Amended Complaint to address these concerns. While many of these revisions are likely unnecessary because Keais had already stated viable claims, these revisions are made in a good faith attempt to address each of Defendants' arguments, and make clear that amendment will not be futile. Specifically, Keais has made each of the

following changes in the Second Amended Complaint to specifically address arguments made in the motions to dismiss:

- In response to Kelley's motion to dismiss claims brought against him in his official capacity, the Plaintiff has removed all claims brought against Kelley in his official capacity.

- Defendant Newsome argues that although Manfred Keais does not allege a claim brought in his individual capacity, that description remains in the case caption. #27-1, at 15. Keais' proposed Second Amended Complaint removes that description from the case caption. #36-2, at 1.

- Newsome next argues that the official capacity claims against Newsome may be duplicative of the claims against the City of Cedartown. #27-1, at 15. Because the City of Cedartown is named in the Second Amended Complaint, Keais has removed the statement that the claims are against Newsome in both his official and individual capacity from the case caption. #36-2, at 1.

- Newsome argues that none of the statutes cited in Count I create a provide right of action. #27-1, at 17-18. This argument is irrelevant, because Georgia's wrongful death statute does make clear that both criminal acts and negligence subject a defendant to liability. O.C.G.A. § 51-4-1(a). Although Newsome's argument would fail under the complaint as currently drafted, Keais has nonetheless made

several amendments to Count I to address this argument, including stating that Georgia's wrongful death statute allows the claim, breaking down more clearly the theories of liability as to each Defendant, and citing to portions of the Restatement (Second) of Torts making it clear that each Defendant owed a legal duty to Keais. #36-2, at 16-23.

- Newsome argues that he is protected by official immunity. #27-1, at 19-22. This argument fails under the complaint as currently drafted, for two reasons: First, the complaint has properly alleged that Newsome violated the Cedartown Police Department's Standard Operating Procedures, which impose nondiscretionary duties upon public officials. #19, at 17-18, 24. Second, Newsome's decision not to obtain immediate aid for Keais was willful, and thus fits within an exception to official immunity. #19, at 18-19, 22-23. Nonetheless, to address Newsome's concerns, the proposed Second Amended Complaint more clearly alleges both Newsome's ministerial duties and that his conduct was willful. #36-2, at 23.

- Cedartown and Newsome both argue that Count I fails because Georgia's public-duty doctrine precludes recovery. #26-1, at 18-19; #27-1, at 17-18. The public-duty doctrine applies only to the failure to offer police protection, and does not apply where a law enforcement official intervenes in the need to render aid in a tortious manner. *See Stevenson v. City of Doraville*, 294 Ga. 220, 222 (2013).

Nonetheless, to address Cedartown's argument, Keais has revised the allegations of Count I to better clarify that it was Newsome's interference in the rendering of aid that subject him and Cedartown to liability. #36-2, at 21-23. Newsome's argument separately fails because the public-duty doctrine applies to claims against municipalities; it does not by its terms encompass claims against individuals. *See City of Rome v. Jordan*, 263 Ga. 26 (1993). If Newsome is protected from liability, it is on some other theory, such as official immunity, not the public-duty doctrine.

- Newsome argues that Count III fails to properly allege a claim for Intentional Infliction of Emotional Distress because Keais has not alleged that Newsome directed any actions towards Eric Keais. #27-1, at 22. Newsome is incorrect; the amended complaint already properly alleges that Newsome, by making the affirmative choice to handle the investigation informally rather than by following the Cedartown Police Department's Standard Operating Procedures, delayed the rendering of aid to Keais. In particular, the complaint alleges that Newsome dispatched Sgt. Turner to the location that Defendants Dover and Kelley had fled to, rather than to the scene of the accident, directly delaying the provision of aid to Keais. #19, at ¶ 38. Nonetheless, in an abundance of caution, Keais has revised the Complaint to more overtly parallel the requirements of a claim for intentional infliction of emotional distress in Georgia. #36-2, at 26-27.

- Newsome also argues that Count III fails to properly allege a claim for Intentional Infliction of Emotional Distress because Keais has not alleged that Keais was conscious after the collision. #21-1, at 22. Keais has included an additional allegation in the proposed Second Amended Complaint to address this argument. #36-2, at 27.

- Newsome and Cedartown argue that Count IV, entitled the Georgia Tort Claims Act, does not apply to it because the City of Cedartown is not included in the definition of "State" under the Georgia Tort Claims Act, and to the extent the claim is brought under Title 36, it is not a separate cause of action, but simply a pre-suit notice requirement. #26-1, at 19-20, #27-1, at 23-24. To address this concern, the Second Amended Complaint removes the Count IV. Where specific allegations in that count were otherwise relevant, Keais has moved them elsewhere.

- Newsome argues that Count VII fails to allege a plausible claim. #27-1, at 24. Keais has removed this count from his proposed Second Amended Complaint.

- Cedartown argues that the complaint is a shotgun complaint because it realleges and incorporates by reference all preceding paragraphs. #26-1, at 2-3. Keais notes that while this factor is often included in the definition of shotgun complaints, it is also routine practice in many well-pleaded complaints. Nonetheless, to address Cedartown's concerns, Keais has amended the complaint to incorporate

by reference in each count only the underlying factual allegations and not the allegations contained in prior counts. #36-2, at 16, 23-24, 27, 30-31, 34-36.

- Cedartown also argues that the complaint is shotgun because as to Counts I and V, it does not separate into a different count each cause of action or claim for relief. #26-1, at 3. Cedartown is incorrect as to Count I, mischaracterizing Keais as asserting "a smorgasbord of state-law claims against different Defendants." In fact, Keais has stated a single claim for wrongful death. Under Georgia law, both negligent and criminal acts create an action for wrongful death held by the estate of the deceased. O.C.G.A. § 51-4-1(a). Accordingly, Count I accurately states a single claim. What Cedartown characterizes as a smorgasbord are simply the various criminal and negligent acts that the Defendants committed to subject them to a claim for wrongful death. That there are a lot of such allegations is merely a reflection of Defendants' particularly outrageous conduct in this case, and not a defect of the complaint. Nonetheless, to address Cedartown's concerns, Keais has amended Count I to more clearly state the specific bases of liability for each Defendant. #36-2, at 16-23. Cedartown is likewise incorrect as to Count V. Negligent hiring, training, and retention are a single claim arising under O.C.G.A. § 34-7-20, and thus are properly pled as one count. While it is admittedly true that Keais could, for example, lose on his theory that Cedartown wrongfully hired Kelley and Newsome but prevail

on his theory that it wrongfully retained them, this possibility does not warrant splitting the count into six separate counts and re-incorporating allegations by reference, thus making the complaint appear more as shotgun pleading, not less. Instead, the three theories of liability are analyzed using the same theories, *see, e.g. Remediation Resources, Inc. v. Balding*, 281 Ga. App. 31 (2006), and thus are best pled together.

- Cedartown argues that Keais' claims against the City based on Defendant Kelley's actions in his official capacity are barred by Georgia's ante-litem statute. #26-1, at 15-18. Although this argument is incorrect because Keais did send a timely ante litem notice, the Second Amended Complaint nonetheless moots it because it asserts no claims against Kelley in his official capacity as a solicitor of Cedartown.

- Cedartown argues that Count VI does not contain a plausible claim of a civil rights violation. #26-1, at 21-23. Because Keais has concluded that Defendants are correct that Kelley was not acting within the scope of his job duties at the time of the underlying incident, Keais has modified this Count to focus only on Newsome. #36-2, at 30-31. Cedartown also argues that Count VI cannot state a violation of the equal protection clause, because to prevail on that claim, Keais must show that his son was treated different than other similarly situated individuals absent a rational basis for the differential treatment. #26-1, at 22. This position is incorrect, because

Keais has already alleged that Newsome treated Keais differently than other bicyclist struck by motorists solely for the impermissible reason that he wished to offer Defendant Kelley special treatment. Nonetheless, in an abundance of caution, Keais has amended the count to more expressly address comparators. #36-2, at 33-34.

- Newsome and Cedartown argue that Counts VIII, IX, and X fail because they rely on the validity of the other underlying claims. #27-1, at 26; #26-1, at 23. Because the proposed Second Amended Complaint states valid claims, this argument will be rendered moot by granting Keais' motion.

- Defendant Kelley in his individual capacity suggests that Keais' negligence claim is "frivolous" because Kelley had no affirmative duty to render aid. #29-1, at 1, 5-8. This position simply ignores nearly the entirety of the fact section and the allegations in Count I, that set out that Kelley engaged in affirmative acts when he inserted himself into the investigation and delayed Keais from receiving life-saving assistance. #19, at 14-20.  Perhaps most extreme is Kelley's suggestion that Keais' claim that Kelley engaged in criminally reckless conduct borders on sanctionable when Defendant Kelley has now been criminally indicted for engaging in reckless conduct arising out of the incident. While that indictment is not proof of his guilt, it certainly raises Keais' allegations well beyond the minimal threshold needed to establish that they are "plausible." Although Kelley's position would fail even

without amendment, Keais has amended Count I to provide additional clarity as to the sources of the relevant duties as to each Defendant. #36-2, at 16-23.

- Defendant Kelley argues that Count III fails as to Kelley under "the first element required to recover for intentional infliction of emotional distress." #29-1, at 9. Keais respectfully cannot discern what the basis of Kelley's argument is. To the extent Kelley is arguing that Keais never alleges that Kelley came into contact with Keais, that claim is both wrong and irrelevant. The amended complaint does allege that Kelley was present at the site of the collision and observed evidence of Keais' presence. In any event, direct contact is not required; Keais is not asserting a count for battery, but that Kelley's decision to intervene in an investigation and delay Keais from receiving life-saving medical assistance was intentional and inflicted severe emotional distress on Keais. Nonetheless, Keais has made some changes to the language of the intentional infliction of emotional distress count in the proposed Second Amended Complaint in an attempt to make the cause of action clearer. #36-2, at 24-27.

- Defendant Kelley next argues that Keais cannot show that Kelley's conduct was extreme or outrageous. #29-1, at 9-10. Keais has candidly made no amendments to the proposed Second Amended Complaint to address this concern because it raises a classic jury question. Keais' theory of this case is that, faced with the possibility

that Kelley and/or his friend Dover would get in trouble for a hit-and-run, Kelley used his position of authority to help himself and Dover and delay Keais from getting desperately-needed medical care. As Kelley abused his authority, Keais spent the final moments of his life bleeding out on the side of the road, alone. The notion that a jury could not permissibly conclude such conduct, if proven, was extreme and outrageous is, frankly, absurd.

The effect of these three reasons is that the proposed Second Amended Complaint contains a more complete and accurate recitation of the facts, removes several claims from the complaint without this Court's need to adjudicate them, and moots many and perhaps all of the arguments raised in Defendants' motions to dismiss. It would, therefore, be in the interest of justice to allow the amendment.

## CONCLUSION

Under prevailing Eleventh Circuit case law, a Plaintiff's first request for permission to amend must nearly always be granted. In addition here, Keais has articulated in specific detail why allowing the Second Amended Complaint is both consistent with principles of justice and would not be futile. Accordingly, Keais respectfully requests that this Court grant Keais' motion to file his proposed Second Amended Complaint.

This 1st day of December, 2021.

INFINITY TRIAL GROUP, P.C.


_____
Min J. Koo
Georgia Bar No. 140984
*Attorney for Plaintiff*


One Atlantic Center
1201 W. Peachtree St., Suite 2300
Atlanta, Georgia 30309
T:  (404) 795-5011 / F: (404) 393-9267
E: Min@InfinityTrial.com

## CERTIFICATE OF SERVICE AND COMPLIANCE

This is to certify that I have this date served a copy of the foregoing MEMORANDUM IN SUPPORT OF MOTION TO FILE SECOND AMENDED COMPLAINT by using the Court's CM/ECF filing system which automatically serves all counsel of record. The undersigned further certifies that the foregoing document has been prepared in accordance with the requirements of Local Rule 5.1(B) of the Northern District of Georgia.

This 1st day of December, 2021.

INFINITY TRIAL GROUP, P.C.

_____
Min J. Koo
Georgia Bar No. 140984
*Attorney for Plaintiff*

One Atlantic Center
1201 W. Peachtree St., Suite 2300
Atlanta, Georgia 30309
T:  (404) 795-5011 / F: (404) 393-9267
E: Min@InfinityTrial.com