IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | |
|---|---|
| **MANFRED KEAIS,** *Individually and as Administrator of the Estate of Eric Christopher Keais, Deceased*, <br><br> **Plaintiff,** <br><br> v. <br><br> **RALPH WILLIAM DOVER, III; OTHER D. KELLEY, III,** *Individually and in his official capacity*; **JAMES C. NEWSOME, JR.,** *Individually and in his official capacity*; **and CITY OF CEDARTOWN,** <br><br> **Defendants.** | **CIVIL ACTION FILE NO.: 4:21-CV-00175-MHC** |

## DEFENDANT JAMES C. NEWSOME, JR.'S RESPONSE TO PLAINTIFF'S MOTION TO FILE SECOND AMENDED COMPLAINT

I. **INTRODUCTION AND SUMMARY OF ARGUMENT.**

Plaintiff's latest motion—through its shifting theories, removal of some claims, and addition of new claims—solidifies Chief Newsome's impression that this case has turned into a game of Whac-a-mole.  But just as the game of Whac-a-mole is futile, so too is Plaintiff's Motion.  This Court should therefore deny Plaintiff's Motion because, among other things, his proposed Second Amended Complaint [Doc. 36-2] still fails to allege a plausible claim

823356.1

against Chief Newsome.

Notably, Keais has not responded to Chief Newsome's Motion to Dismiss Plaintiff's Amended Complaint and the deadline to respond has long passed. (*See* Chief Newsome's Mot. to Dismiss Pl.'s Am. Compl. [Doc. 27].)[1] Apparently, Keais believes that filing this Motion satisfies his obligation to respond. It does not. This Court should therefore deny Plaintiff's Motion, grant Chief Newsome's Motion to Dismiss as unopposed, and dismiss the claims brought against Chief Newsome with prejudice.

## II. CHIEF NEWSOME WOULD HAVE CONSENTED TO A REQUEST TO FILE AN AMENDED COMPLAINT THAT DISMISSED CERTAIN CLAIMS.

In his Motion, Keais states that the Proposed Second Amended Complaint will dismiss these claims:

- Claims based on the theory that Defendant Kelley was acting as the solicitor of the Cedartown Municipal Court;[2]

---

[1] Keais requested an extension of time to respond through December 1—which Chief Newsome and the City consented to and this Court granted—but that deadline has come and gone. (*See* Pl.'s Mot. for Extension of Time [Doc. 32]; Chief Newsome's Consent [Doc. 33]; Nov. 18, 2021 Order Granting Extension of Time [Doc. 34].)

[2] This theory was new to the Amended Complaint and was not included in the original Complaint. (*Compare* Am. Compl. *with* Compl.) Keais does not state why this claim was not included in the original Complaint or why that he now believes that it is not plausible. (*See* Pl.'s Mot. to File 2d Am. Compl. Br. [Doc. 36-1] ("Mot."))

- Claims brought against Defendant Kelley in his official capacity;[3]

- Claims brought by Manfred Keais in his individual capacity;[4]

- Claims brought against Chief Newsome in his official capacity;[5]

- Count IV – Georgia Tort Claims Act;[6]

- Count VII – Section 1985 Claim;[7]

Chief Newsome would have consented to the dismissal of these claims if they were filed in an amended complaint that did not contain new claims. Thus, Chief Newsome contends that the proper remedy is to grant his Motion to Dismiss Plaintiff's Amended Complaint as to these counts as unopposed.

---

[3] The Motion admits that "Keais does not currently have a good faith basis for alleging a claim against Kelley in his official capacity," (*see* Mot. at 5), which invites the question of whether he ever had a good-faith basis for such a claim.

[4] Chief Newsome moved to dismiss these claims in his Motion to Dismiss Plaintiff's Complaint, but Keais still included them in his Amended Complaint. (*See* Chief Newsome's Mot. to Dismiss Compl. Br. [Doc. 10-1] at 16; *see* Am. Compl.) It's unclear why Keais forced Chief Newsome to spend time addressing that issue twice. (*See* Chief Newsome's Mot. to Dismiss Am. Compl. Br. [Doc. 27-1] at 15.)

[5] Again, Plaintiff forced Chief Newsome to move against these claims twice. (*See* Chief Newsome's Mot. to Dismiss Compl. Br. [Doc. 10-1] at 16-17; *see* Chief Newsome's Mot. to Dismiss Am. Compl. Br. [Doc. 27-1] at 15-16.)

[6] Once again, Defendant had to move twice to get Keais to reevaluate this claim. (*See* City's Mot. to Dismiss Compl. Br. [Doc. 8-1] at 17-18; *see* City's Mot. to Dismiss Am. Compl. Br. [Doc. 26-1] at 19-20.)

[7] Chief Newsome had to move twice to get Keais to dismiss this claim. (*See* Chief Newsome's Mot. to Dismiss Compl. Br. at 24-25; *see* Chief Newsome's Mot. to Dismiss Am. Compl. Br. at 24.)

823356.1

## III. STANDARD GOVERNING PLAINTIFF'S MOTION.

Keais contends that this Court has limited discretion over his Motion—
that it is "due to be granted as a matter of course"—and that his Motion
"must nearly always be granted." (Pl.'s Mot. at 2-3, 14.) In short, Keais
asserts that "Eleventh Circuit case law effectively establishes his right to a
minimum of two amendments." (*Id.* at 3.) Keais is wrong.

In support of his mistaken position, Keais cites *Bank v. Pitt*, 928 F.2d
1108 (11th Cir. 1991), and provides the following quotation: "'where a more
carefully drafted complaint might state a claim, a plaintiff **must** be given at
least one chance to amend the complaint before the district court dismisses
the action with prejudice.'" (Pl.'s Mot. at 1-2 (quoting *Bank*, 928 F.2d at
1112) (emphasis in Plaintiff's Motion).) Keais's Motion asserts that *Bank* was
"overruled in part on unrelated grounds." (*Id.* at 2.)[8] Again, Keais is wrong.

In *Wagner v. Daewoo Heavy Industries America Corp.*, 314 F.3d 541
(11th Cir. 2002), the Eleventh Circuit explicitly "overrule[d] *Bank*":

> In this en banc opinion, we address whether this case should be
> remanded to the district court with instructions to permit the
> plaintiff to amend his complaint. Under *Bank*, we would answer
> that question in the affirmative. 928 F.2d at 1112 ("Where a
> more carefully drafted complaint might state a claim, a plaintiff

---

[8] Keais did not provide a citation to support his "overruled in part on
unrelated grounds" position. (*See* Pl.'s Mot. at 2.)

> must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice."). We, however, have determined that the *Bank* rule should no longer be followed. As a result, we overrule *Bank* and substitute the following rule: A district court is not required to grant a plaintiff leave to amend his complaint sua sponte when the plaintiff, who is represented by counsel, never filed a motion nor requested leave to amend before the district court.

*Id.* at 542. The court noted that "[t]his new rule is more efficient and in line with the critically important concept of finality in our judicial system." *Id.* "Under the *Bank* rule, a plaintiff could sit idly by as he awaited the district court's determination with respect to a Rule 12(b)(6) motion to dismiss; he need not seek leave to amend his complaint nor amend it as of right, because he would have 'two bites at the apple' on appeal." *Id.* at 543. The proper standard governing Plaintiff's Motion is provided below.

Since Keais has already amended his complaint as a matter of right, he must obtain this Court's leave. "As a general rule, leave to amend under Fed. R. Civ. P. 15(a) is given freely." *See Meadows v. Ward*, No. CV 321-047 2021 WL 5456973, at *1 (S.D. Ga. Nov. 22, 2021). "That said, leave to amend is not guaranteed, and a trial court may deny such leave 'in the exercise of its inherent power to manage the conduct of litigation before it.'" *Id.* (quoting *Reese v. Herbert*, 527 F.3d 1253, 1263 (11th Cir. 2008)). A district court may deny a motion for leave "where there is substantial ground for doing so, such

as 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment.'" *Reese v. Herbert*, 527 F.3d 1253, 1263 (11th Cir. 2008) (quoting *Burger King v. C.R. Weaver*, 169 F.3d 1310, 1319 (11th Cir. 1999)) (alteration in original). "A proposed amendment may be denied for futility 'when the complaint as amended would still be properly dismissed.'" *Coventry First, LLC v. McCarty*, 605 F.3d 865, 870 (11th Cir. 2010).

## IV. ARGUMENT AND CITATION OF AUTHORITY.

### A. Keais alleges three substantive claims against Chief Newsome.

In the proposed Second Amended Complaint, Keais alleges three substantive claims against Chief Newsome: (1) Count I; (2) Count III; and (3) Count VI. (*See* Proposed 2d Am. Compl.) Count I is a negligence/wrongful death claim based on Georgia law. (*See id.* Ct. I.) Count III is a claim for intentional infliction of emotional distress that is brought under Georgia law. (*See id.* Ct. III.) Count VI is a Section 1983 claim, but it is unclear what constitutional right it rests on. (*See id.* Ct. VI.) Keais also brings Counts VII, VIII, and IX against Chief Newsome for "damages," punitive damages, and

attorneys' fees, but those claims are all dependent on a plausible underlying substantive claim.  (*See id.* Cts. VII, VIII, IX.)

**B.  The proposed Second Amended Complaint is futile because none of the three substantive claims is plausible.**

*(1)  Count I fails because the public-duty doctrine controls.*

(a)  *None of the statutes cited creates a private right of action.*

The Proposed Second Amended Complaint alleges that Chief Newsome violated O.C.G.A. Sections 16-5-60, 51-1-6, and 51-1-13.  (*See* Proposed 2d Am. Compl. ¶¶ 74-75.)  Presumably, Keais is asserting that those alleged violations create a private right of action against Chief Newsome.  (*See id.* Ct. I.)  They do not.  *See Smith v. Chemtura Corp.*, 297 Ga. App. 287, 294-95 (2009) (holding that there was no private right of action under Section 16-5-60); *see Jastram v. Williams*, 276 Ga. App. 475, (2005) (finding that Section 51-1-6 "does not create a separate cause of action, but simply authorizes the recovery of damages for the breach of a legal duty otherwise arising … under a statute or common law.").  And Section 51-1-13 is the tort of battery, but there is no allegation that Chief Newsome ever touched Eric Keais.  *See* O.C.G.A. § 51-1-13.  Thus, none of those statutes provides a method of recovery.  Instead, Chief Newsome's actions are governed by the public-duty

doctrine.

> (b)     *The public-duty doctrine establishes that Chief Newsome did not owe a duty to Eric Keais.*

In *City of Rome v. Jordan*, 263 Ga. 26 (1993), the Supreme Court of Georgia adopted the public-duty doctrine, which provides that a municipality can only be liable to a member of the public for failure to provide police protection if a "special relationship" exists. *See id.* "[W]here failure to provide police protection is alleged, there can be no liability based on a municipality's duty to protect the general public." *Id.* at 28. The court did find that liability could exist where a "special relationship" existed: "where there is a *special relationship* between the individual and the municipality which sets the individual apart from the general public and engenders a *special duty* owed to that individual, the municipality may be subject to liability for the nonfeasance of its police department." *Id.* at 28-29 (emphasis in original); *see also Landis v. Rockdale County*, 212 Ga. App. 700 (1994) (applying public-duty doctrine to claims against individual officers).[9] The court established three prerequisites to finding a special duty:

---

[9] Keais's Motion asserts that "the public-duty doctrine … does not by its terms encompass claims against individuals." (Pl.'s Mot. at 8.) *Landis* refutes this position and Chief Newsome has twice previously cited *Landis* for this very proposition. (*See* Chief Newsome's Mot. to Dismiss Compl. Br. at 18; *see* Chief Newsome's Mot. to Dismiss Am. Compl. at 18.)

823356.1

(1) an explicit assurance by the municipality, through promises or actions, that it would act on behalf of the injured party;

(2) knowledge on the part of the municipality that inaction could lead to harm; and,

(3) justifiable and detrimental reliance by the injured party on the municipality's affirmative undertaking.

*Jordan*, 263 Ga. at 29.

Simply put, the Proposed Second Amended Complaint does not sufficiently allege any of the three prerequisites; much less all three. Because the public-duty doctrine establishes that Chief Newsome owed no individual duty to Eric Keais (or his father), Count I is not plausible.

> *(c)     Chief Newsome is protected by official immunity.*

Alternatively, Count I would fail because Chief Newsome is protected by official immunity. "Official or qualified immunity 'protects individual public agents from personal liability for discretionary actions taken within the scope of their official authority, and done without wilfulness, malice or corruption.'" *Reed v. DeKalb County*, 264 Ga. App. 83, 86 (2003) (quoting *Teston v. Collins*, 217 Ga. App. 829, 830 (1995)). "The doctrine of official immunity, also known as qualified immunity, affords limited protection to public officers and employees sued in their personal capacity." *Id.* at 86. The Georgia Court of Appeals summarized that, "[i]n its essence, qualified

immunity mandates that a public employee is not immune from suit when he performs ministerial acts negligently or performs ministerial or discretionary acts with malice or an intent to injure; rather, he or she is immune from suit only for the negligent performance of discretionary acts." *Russell*, 296 Ga. App. at 117.

"The rationale for this immunity is to preserve the public employee's independence of action without fear of lawsuits and to prevent a review of his or her judgment in hindsight." *Standard v. Hobbs*, 263 Ga. App. 873, 876 (2003). "'In all but the most exceptional cases, qualified immunity protects government officials performing discretionary functions from the burdens of civil trials and from liability for damages.'" *Means v. City of Atlanta Police Dep't*, 262 Ga. App. 700, 705 (2003) (quoting *Bd. of Comm'rs of Effingham County v. Farmer*, 228 Ga. App. 819, 823 (1997)).

Although Keais alleges that Chief Newsome's acts were ministerial, this is a legal conclusion and "[w]hether a government official is entitled to official immunity is a question of law." *See Todd v. Brooks*, 292 Ga. App. 329, 330 (2008). In the context of official immunity, "a discretionary act 'calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a

way not specifically directed.'" *Reed v. DeKalb County*, 264 Ga. App. 83, 86 (2003) (quoting *Harvey v. Nichols*, 260 Ga. App. 187, 191 (2003)). Here, Keais faults Chief Newsome's "decision" to ask Sgt. Turner to respond and investigate the possible accident rather than "call 911 or notify the dispatcher." (*See* Proposed 2d Am. Compl. ¶ 39.) But a fair-reading of the allegations shows that Chief Newsome chose to ask Sgt. Turner to respond and investigate. In fact, Keais explicitly alleges that Chief Newsome's "professional judgement and decision was influenced …." (*See* Proposed 2d Am. Compl. ¶ 42.) Thus, the facts show that Chief Newsome's "decision" to ask Sgt. Turner to respond was a discretionary act.[10]

Since Chief Newsome's acts were discretionary, he is protected by official immunity unless Keais has shown that he acted with "actual malice." *See Anderson v. Cobb*, 258 Ga. App. 159, 159 (2002). To pierce the protection of official immunity, "[a]ctual malice toward plaintiff must be shown, not mere anger, frustration, or irritation, to constitute an exception to official immunity." *Woodward v. Gray*, 241 Ga. App. 847, 851 (2000). "'[I]n the

---

[10] Keais's Proposed Second Amended Complaint neither attaches the alleged Standard Operating Procedures nor quotes them directly. (*See, e.g.*, Proposed 2d Am. Compl. ¶¶ 31, 38.) Keais's failure to do so renders the interpretation as conclusory and without a factual basis.

context of official immunity, actual malice requires a deliberate intention to do wrong and denotes express malice or malice in fact.'" *Selvy v. Morrison*, 292 Ga. App. 702, 704 (2008) (quoting *Adams v. Hazelwood*, 271 Ga. 414, 414-15 (1999)). Furthermore, "[a]ctual malice does not include implied malice, or the reckless disregard for the rights and safety of others." *Id.* "'A deliberate intention to do wrong such as to constitute the actual malice necessary to overcome official immunity must be the intent to cause the harm suffered by the plaintiffs.'" *Id.* (quoting *Murphy v. Bajjani*, 282 Ga. 197, 203 (2007)). "Likewise, '[t]he phrase 'actual intent to cause injury' has been defined in a tort context to mean an actual intent to cause harm to the plaintiff, not merely an intent to do the act purportedly resulting in the claimed injury. This definition of intent contains aspects of malice, perhaps a wicked or evil motive.'" *Id.* (quoting *Kidd v. Coates*, 271 Ga. 33, 33-34 (1999)).

Keais has not alleged any facts to show that Chief Newsome acted with "actual malice." While Keais alleged in his Amended Complaint that Chief Newsome acted "for the *sole* purpose of securing improper personal gain" (Am. Compl. ¶ 124), he now alleges that Chief Newsome made this decision "[i]n order to secure a future favor from Defendant Kelley and/or his good will …." (*See, e.g.*, Proposed 2d Am. Compl. ¶ 91.) Chief Newsome's alleged

823356.1

desire for "personal gain," "future favor," or "goodwill" precludes a finding of "actual malice." He is therefore protected by official immunity and Count I is not plausible.

> ### (2) Count III fails because, among other things, Chief Newsome did not cause Eric Keais any emotional damage.

Keais's Proposed Second Amended Complaint continues to allege that Chief Newsome intentionally inflicted emotional damage on Eric Keais. (*See* Proposed 2d Am. Compl. Ct. III.) It's startling that Keais alleges that Chief Newsome and Kelley intentionally inflicted emotional damage, but that Dover—the actual driver of the vehicle and the only person to have alleged to have any contact with Keais—is only alleged to have negligently inflicted emotional damage. (*Compare id.* Ct. III *with id.* Ct. II.) In Paragraph 92, Keais alleges that "Eric was conscious and experienced severe emotional distress and suffering, knowing that his death was imminent." (Proposed 2d Am. Compl. ¶ 92.) But the allegations in the Proposed Second Amended Complaint show that the emotional distress and suffering were caused by the automobile accident—and the resulting injuries. (*See* Proposed 2d Am. Compl.) There is no allegation that Eric Keais knew that Chief Newsome and Kelley were allegedly conspiring to kill him or, at least, let him suffer.

(*See id.*)

Furthermore, the Proposed Second Amended Complaint does not allege that Chief Newsome's actions were extreme or outrageous. It does allege that Chief Newsome ordered Sgt. Turner to stop whatever he was doing, drive to meet Kelley and Dover, and investigate what might have happened. This is simply not extreme and outrageous conduct. Alternatively, Chief Newsome is protected by official immunity. *See Garcia v. Shaw Indus., Inc.*, 321 Ga. App. 48, 52 (2013) (an IIED claim "requires a showing of 'extreme and outrageous conduct,' which means much more than malice ….") (internal citation omitted).

> **(3)   Count VI fails because, among other things, it does not sufficiently identify a similarly situated comparator.**

At bottom, Keais's Section 1983 claim is a misguided attempt to convert state-law tort claims into constitutional violations. While it is hard to understand Keais's claim and what constitutional right has been allegedly violated, it's almost as if it's supposed to be a claim akin to a one for deliberate indifference to a serious medical need. But Keais was not in custody and thus that claim would make no sense here. Even if there was some possible constitutional claim available, the Proposed Second Amended

Complaint still fails to allege a plausible one.

Presumably, this is a class of one equal protection claim. "To prevail on a class of one equal protection claim, Plaintiffs must show that they were treated differently from other similarly situated individuals absent a rational basis for the differential treatment." *See VTS Trans., Inc. v. Palm Beach County*, 239 F. Supp. 3d 1350, 1354 (S.D. Fla. 2017). "Adjudging equality necessarily requires comparison, and 'class of one' plaintiffs may (just like other plaintiffs) fairly be required to show that their professed comparison is sufficiently apt." *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205 (11th Cir. 2007). The Eleventh Circuit has stated that "[a] 'class of one' plaintiff might fail to state a claim by omitting key factual details in alleging that it is 'similarly situated' to another." *Id.* That is exactly the case with Keais's Proposed Second Amended Complaint.

In the Proposed Second Amended Complaint, Keais makes more of an attempt at alleging a comparator, but still falls well short. In Paragraph 116, Keais alleges:

> Upon information and belief, discovery will show that Defendant Newsome has routinely received reports of automotive accidents in which he has neither deviated from Cedartown's Standard Operating Procedures nor instructed his subordinates to do likewise. Instead, Defendant Newsome's policy and practice is to deviate from those practices only for the benefit of certain

> individuals, such as those, like Defendant Kelley, who are
> operating under color of law.

(Proposed 2d Am. Compl. ¶ 116.)  The Eleventh Circuit has decried that a similarly situated comparator "must be *prima facie* identical in all relevant respects."  *See Campbell v. Rainbow City, Ala.*, 434 F.3d 1306, 1315 (11th Cir. 2006).  And the Eleventh Circuit has "frequently noted that the 'similarly situated' requirement must be rigorously applied in the context of 'class of one' claims."  *Leib v. Hillsborough County Public Trans. Comm'n.*, 558 F.3d 1301, 1307 (11th Cir. 2009).  To satisfy the high bar, Keais would have to allege—with factual allegations—that Chief Newsome had received a similar call, at night, from a friend of a driver, stating that the driver may have hit something (but did not know what is was), without providing a specific location of the accident, and that Chief Newsome immediately called 911 and asked for an ambulance to be sent to the then-unknown location, and that Chief Newsome did this to invidiously discriminate against Eric Keais's constitutional rights.  Keais's allegation falls well short of that.

Furthermore, Keais alleges Paragraph 116 "[u]pon information and belief"—presumably to try to prevent a Rule 11 violation.  But that qualifier renders the allegation conclusory since it is not supported by any well-pleaded factual allegation.  *See McCullough v. Bd. of Regents of the Univ. Sys.*

*of Ga.*, 623 F. App'x 980, 983 (11th Cir. 2015); *see also Monsrud v. Regnerative Orthopaedics & Spine Institute, P.C.*, No. 1:20-CV-1571-AT-WEJ, 2020 WL 12654451, at *4 (N.D. Ga. Sept. 9, 2020) ("[t]his Court cannot assume the truth of allegations made on 'information and belief' unless enough facts are alleged to make those statements plausible."). In *Turner v. Williams*, a district court found the following very similar allegation to be "the definition of conclusory":

> "The actions by and on behalf of Defendant JAX SHERIFF set forth in this count were not unique events of the violations set forth herein. On information and belief, further similar events of wrongful actions on the part of Defendant JAX SHERIFF and/or its employees or agents have taken place, such events combining to determine a pattern of similar wrongful and illegal behavior."

*Turner v. Williams*, No. 3:19-cv-641-J-32PDB, 2020 WL 1904016, at *7 (M.D. Fla. April 17, 2020). Keais's allegation is likewise the definition of conclusory.

### C. Keais's Motion should be denied because of dilatory motives and bad faith.

There are at least four aspects of Keais's pleading history and strategy that support a denial of his Motion because they evidence dilatory motives, bad faith, or both: (1) Keais's continued shifting theories of Kelley's role; (2) the shifting federal claims that Keais has brought against Chief Newsome; and (3) Keais's refusal to dismiss frivolous claims; and (4) Keais's continued

misrepresentation to this Court that Chief Newsome "had complete control and authority over the September 11, 2019 hit-and-run Crime investigation." (*See* Proposed 2d Am. Compl. ¶ 70.)

### (1) *Keais's shifting theories about Kelley's role.*

Keais's shifting theory about Kelley's role has been hard to keep up with. At first, Keais alleged that Kelley acted as a State Representative. (*See* Compl. [Doc. 1] ¶¶ 57, 86.) Then, Keais alleged that Kelley acted as both a State Representative and as solicitor of the Cedartown Municipal Court. (*See* Am. Compl. ¶¶ 9, 63, 115.) Keais also alleged that the City was liable for Kelley's actions. (*See id.* ¶ 116.) Now, Keais has decided that Kelley was not acting as solicitor, but in his individual capacity—but now under color of law. (*See* Proposed 2d Am. Compl.) Keais has failed to provide any justification for the complete shifting of theories, which have caused all the Defendants having to expend resources to respond to these shifting theories.

### (2) *Keais's federal claims against Chief Newsome continue to evolve without explanation.*

Consistent with his claims against Kelley, Keais has continued to change his theory of legal liability against Chief Newsome under federal law. First, Keais alleged, apparently, (1) a Section 1983 equal protection claim against the City, Chief Newsome, and Kelley (*see* Compl. Ct. V), (2) a Section

1983 claim for "Government Entity Liability" against the City and Chief Newsome (*see id.* Ct. VI); and a Section 1985 claim against Dover, Kelley, and Chief Newsome (*see id.* Ct. VII). After Chief Newsome moved to dismiss Keais's Complaint, Keais filed an Amended Complaint that alleged only one federal claim against Chief Newsome: (1) a Section 1985 claim in Count VII. (*See* Am. Compl. [Doc. 19] Ct. VII.) The Amended Complaint's only Section 1983 claim—Count VI—was brought only against the City of Cedartown, which had the effect of dismissing Keais's Section 1983 claim against Chief Newsome. (*See id.* Ct. VI.) Now, Keais wants to revive the Section 1983 claim against Chief Newsome that he voluntarily dismissed through the filing of his Amended Complaint. (*See* Proposed 2d Am. Compl. Ct. VI.) Once again, Keais has not provided any explanation for the shifting theories or his attempt to revive a previously dismissed claim.

### (3) *Keais's refusal to dismiss frivolous claims shows bad faith and dilatory motives.*

As discussed in Part II. above, Chief Newsome has been forced to repeatedly move to dismiss claims: (1) claims brought by Manfred Keais in his individual capacity; (2) claims brought against Chief Newsome in his official capacity; (3) claims brought under the Georgia Tort Claims Act; and (4) Keais's Section 1985 Claim. *See* discussion *supra* Part II. This pattern

continues with Keais's current Section 1983 claim against Chief Newsome—

he continues to fail to allege a similarly situated comparator—and his

allegations the Chief Newsome was in charge of the investigation.

### (4) Keais's continued allegation that Chief Newsome was in charge of the investigation shows his bad faith.

Keais's Proposed Second Amended Complaint still contains the false

allegation that Chief Newsome was in charge of the investigation. (*See*

Proposed 2d Am. Compl. ¶ 70.) And Keais alleges—both explicitly and by

implication—that the investigation was not conducted properly. (*See id.* ¶¶

55-57, 70-72.) Keais explicitly alleges that Chief Newsome "violated several

of his Department's protocols and Standard Operating Procedures" including

"not ensuring proper investigation of the confessed offender; and not making

the mandated arrest of the offender that had committed felony(s) …." (*See id.*

¶ 72.) As both the City of Cedartown and Chief Newsome have pointed out to

Keais and his attorney, the crime scene was turned over to the Georgia State

Patrol and Chief Newsome had no authority or investigative responsibilities.

(*See* City's Mot. to Dismiss Am. Compl. Br. [Doc. 26-1] at 12 n.9; *see* Chief

Newsome's Mot. to Dismiss Am. Compl. Br. [Doc. 27-1] at 12 n.11.)

To be clear, the documents attached to both Keais's Amended

Complaint and to his Proposed Second Amended Complaint show how wrong

this allegation is.  The Cedartown Police Department Incident Report and the Georgia Motor Vehicle Crash Report are attached as part of Exhibit 1 to both the Amended Complaint and the Proposed Second Amended Complaint.  (*See* Am. Compl. Ex. 1 (pages 41-43, 44-45); *see* Proposed 2d Am. Compl. Ex. 1 (pages 43-45, 46-47).)  The Incident Report states that "[o]n 09/11/2019 at 23:10 GSP arrived on scene and the accident scene was turned over to them." (Am. Compl. at 42; Proposed 2d Am. Compl. at 44.)  "GSP" is the Georgia State Patrol.  The Crash Report was completed by "R. Holman" of "GSP"—not the Cedartown Police Department.  (*See* Am. Compl. at 45; *see* Proposed 2d Am. Compl. at 47.)  The Crash Report states that GSP was dispatched at 21:51 and arrived at 23:01.  (*See* Am. Compl. at 44; *see* Proposed 2d Am. Compl. at 46.)  And the Crash Report makes clear that "SCRT/A is handling the investigation."  (*See* Am. Compl. at 45; *see* Proposed 2d Am. Compl. at 47.)  "SCRT" is an acronym for the Georgia State Patrol's "Specialized Collision Reconstruction Team."  Finally, the Crash Report states in the section entitled "Citation Information" that any citation to be issued is "Pending Per SCRT A."  (Am. Compl. at 44; Proposed 2d Am. Compl. at 46.) Thus, Keais's own exhibits refute his allegations.  And his repeated refusal to remove the false allegations show bad faith.

## V. CONCLUSION.

Keais's Motion to File Second Amended Complaint should be denied because it would be futile and evidences both dilatory motives and bad faith. This Court should therefore deny Plaintiff's Motion, grant Chief Newsome's Motion to Dismiss as unopposed, and dismiss the claims brought against Chief Newsome with prejudice.

\* \* \*

This certifies that this Response was prepared with Century Schoolbook 13 point font in accordance with this Court's Local Rules.

Respectfully submitted this 15th day of December, 2021.

**BRINSON, ASKEW, BERRY, SEIGLER, RICHARDSON & DAVIS, LLP**

By: /s/ J. Anderson Davis
J. ANDERSON DAVIS
Georgia Bar No. 211077
SAMUEL L. LUCAS
Georgia Bar No. 142305

Post Office Box 5007
Rome, Georgia 30162-5007
Phone: (706) 291-8853
Fax: (706) 234-3574
adavis@brinson-askew.com
slucas@brinson-askew.com

*Attorneys for Defendant James C. Newsome, Jr.*

## CERTIFICATE OF SERVICE

I do hereby certify that I have this day electronically filed **Defendant James C. Newsome, Jr.'s Response to Plaintiff's Motion to File Second Amended Complaint** with the Clerk of Court using the CM/ECF system which will automatically send notification of such filing to the following parties at interest:

| | |
|---|---|
| Annarita L. McGovern, Esq.<br>Terry L. Long, Esq.<br>SATCHER & MCGOVERN LLC<br>amcgovern@satchermcgovernlaw.com<br>tlong@satchermcgovernlaw.com<br>*Counsel for Defendant Othel Kelley for the official capacity claims* | Ranse M. Partin, Esq.<br>James T. Cox., Esq.<br>CONLEY GRIGGS PARTIN LLP<br>ranse@conleygriggs.com<br>james@conleygriggs.com<br>*Counsel for Defendant Othel D. Kelley III, in his personal capacity only* |
| Min J. Koo, Esq.<br>INFINITY TRIAL GROUP, P.C.<br>Min@InfinityTrial.com<br>*Attorney for Plaintiff* | Pamela N. Lee<br>M. Ames Filippini<br>SWIFT, CURRIE, McGHEE & HIERS, LLP<br>pamela.lee@swiftcurrie.com<br>ames.filippini@swiftcurrie.com<br>*Counsel for Defendant Othel D. Kelley, III* |

And via U.S. Mail to:

Ralph William Dover III
76 Ayers Road
Aragon, Georgia 30104

This 15th day of December, 2021.

823356.1

**BRINSON, ASKEW, BERRY, SEIGLER, RICHARDSON & DAVIS, LLP**

By: <u>/s/ J. Anderson Davis</u>
      J. ANDERSON DAVIS
      Georgia Bar No. 211077

Post Office Box 5007
Rome, Georgia 30162-5007
(706) 291-8853 (telephone)
(706) 234-3574 (fax)

*Attorneys for Defendant*
*James C. Newsome, Jr.*

823356.1